United States District Court
Middle District of Florida
Orlando Division

**MICHAEL PATRICK BARRETT,**

***Plaintiff,***

**v.** **NO. 6:25-CV-1797-PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

***Defendant.***

---

## Order

In this challenge to the Commissioner of Social Security's decision, the plaintiff argues that the Appeals Council failed to apply the correct legal standards to the job-number estimates he submitted after a decision by an Administrative Law Judge (ALJ). The procedural history, evidence, and law are summarized in the ALJ's decision, Tr. 1731, and in the parties' briefs, Docs. 13, 16, and are not fully repeated here.

To receive benefits or judicial review of a denial of benefits, a claimant ordinarily must follow an administrative review process. 20 C.F.R. §§ 404.900(a); 416.1400(a). A state agency acting under the Commissioner's authority usually makes an initial determination. *Id.* §§ 404.900(a)(1), 404.1503(a), 416.903(a), 416.1400(a)(1). If dissatisfied with the initial determination, the claimant may ask for reconsideration. *Id.* §§ 404.907, 416.1407. If dissatisfied with the reconsideration determination, the claimant may ask for a hearing before an ALJ. *Id.* §§ 404.929, 404.930, 416.1429,

416.1430. If dissatisfied with the ALJ's decision, the claimant may ask for review by the Appeals Council. *Id.* §§ 404.900(a)(4), 416.1400(a)(4).

The Social Security Administration (SSA) conducts "the administrative review process in an informal, non-adversarial manner" and generally "will consider at each step of the review process any information [the claimant] present[s]," *id.* §§ 404.900(b), 416.1400(b), including at the Appeals Council level, *id.* §§ 404.976(b), 416.1476(b). Generally, a claimant must submit evidence to the SSA or inform the SSA about evidence no later than five business days before the ALJ hearing. *Id*. §§ 404.935(a), 416.1435(a). When the Appeals Council acts on a request for review, it usually considers only the evidence before the ALJ. *Id*. §§ 404.970(b) (2020), 416.1470(b) (2020). But the Appeals Council must review a case at a claimant's request if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."[1] *Id*. §§ 404.970(a)(5) (2020), 416.1470(a)(5) (2020). The claimant must also demonstrate good cause for not submitting the evidence earlier. *Id*. §§ 404.970(b) (2020), 416.1470(b) (2020). The Eleventh Circuit has not

[1]The previous regulations did not use the word "probability." *See* 20 C.F.R. § 404.970 (2016) ("[I]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the [ALJ] hearing decision. It will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record."); *id.* § 416.1470(b) (2016) (similar). Interpreting the previous regulations, the Eleventh Circuit held evidence is "material" if there is a reasonable "possibility" the evidence would change the outcome. *See, e.g., Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 821 (11th Cir. 2015); *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). The "possibility" standard and cases applying the standard no longer apply.

defined "reasonable probability" in this context. The Supreme Court has defined "reasonable probability" in the ineffective-assistance-of-counsel context as "a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).

If a claimant follows the administrative review process without success, he may sue under 42 U.S.C. § 405(g):

> **(g) Judicial review**
>
> [Sentence one] Any individual, after any final decision of the Commissioner ... made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner ... may allow.
>
> [Sentence two] Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides[.]
>
> [Sentence three] As part of the Commissioner's answer the Commissioner ... shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.
>
> [Sentence four] The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner ..., with or without remanding the cause for a rehearing.
>
> [Sentence five] The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner ... the court shall review only the question of conformity with such regulations and the validity of such regulations.
>
> [Sentence six] The court may, on motion of the Commissioner ... made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner ... for further action by the Commissioner ..., and it

> may at any time order additional evidence to be taken before the Commissioner ..., but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner ... shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and, in any case in which the Commissioner has not made a decision fully favorable to the individual, a transcript of the additional record and testimony upon which the Commissioner's action in modifying or affirming was based.
>
> [Sentence seven] Such additional or modified findings of fact and decision shall be reviewable only to the extent provided for review of the original findings of fact and decision.
>
> [Sentence eight] The judgment of the court shall be final except that it shall be subject to review in the same manner as a judgment in other civil actions.
>
> [Sentence nine] Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner ... or any vacancy in such office.

42 U.S.C. § 405(g) (re-formatted into separate paragraphs); *see also* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g) for Supplemental Security Income).

Under § 405(g), a court reviews legal principles de novo and factual findings for "substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoted authority omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.*

Under sentence four of § 405(g), a court may review a denial of review by the Appeals Council. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). If the claimant presents no new evidence to the Appeals Council, and the Appeals Council denies review, the ALJ's decision is reviewed as the Commissioner's final decision. *Id.* If the claimant properly presents new evidence to the Appeals Council, the court "must consider whether that new evidence renders the denial of benefits erroneous." *Id.*

When the Appeals Council "erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015). Therefore, "whether evidence meets the new, material, and chronologically relevant standard" is subject to de novo review. *Id.*; *see also Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1060, 1063 (11th Cir. 2021) (applying de novo review when the Appeals Council stated "[w]e did not consider or exhibit this evidence").

A different standard applies when "the Appeals council consider[s] the additional evidence and then denie[s] review." *Washington*, 806 F.3d at 1321 n.5. In non-binding decisions, the Eleventh Circuit has stated that a deferential standard applies when the Appeals Council denies review but, in doing so, considers—rather than refuses to consider—additional evidence. *See Goble v. Soc. Sec. Admin., Comm'r,* No. 22-10842, 2023 WL 2823401, at *8 n.20 (11th Cir. Apr. 7, 2023) ("[A] more deferential review standard is applied when the Appeals Council considers a claimant's additional evidence[.]"); *Sanders v. Soc. Sec. Admin., Comm'r*, 854 F. App'x 311, 315–16 (11th Cir. 2021) (holding that when the Appeals Council considered additional evidence and found no reasonable probability the evidence would change the outcome, remand was inappropriate because "substantial evidence supports the

Appeals Council's determination that no 'reasonable probability' existed that the additional evidence would change the outcome"). "When the Appeals Council accepts additional evidence, considers the evidence, and then denies review, it is not 'required to provide a detailed rational[e] for denying review.'" *Washington*, 806 F.3d at 1321 n.5 (quoting *Mitchell v. Comm'r, Soc., Sec. Admin.,* 771 F.3d 780, 784 (11th Cir. 2014)).

To decide if a claimant is disabled, the SSA uses a five-step sequential process.[2] 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). At step one, the SSA asks whether the claimant is engaged in substantial gainful activity. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the SSA asks whether the claimant has a severe impairment or combination of impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the SSA asks whether the claimant has an impairment or combination of impairments meeting or medically equaling the severity of any impairment in the Listing of Impairments. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). At step four, the SSA asks whether the claimant can perform any of his past relevant work considering his residual functional capacity (RFC). *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the SSA asks whether the claimant can adjust to other work considering his RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1566(b), 416.920(a)(4)(v), 416.966(b).

The claimant has the burden of persuasion through step four. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At step five, the burden shifts to the

---

[2]To obtain benefits, a claimant must show that he is disabled. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1). A claimant is disabled if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy, *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004), either in the region where the claimant lives or in several regions in the country, 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1). If the Commissioner satisfies that burden, the burden shifts back to the claimant to show that he cannot perform the jobs identified by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

For step five, the SSA "will take administrative notice of reliable job information available from various governmental publications," including the Dictionary of Occupational Titles (DOT), county business patterns and census reports published by the United States Census Bureau, occupational analyses prepared by state agencies, and the Occupational Outlook Handbook published by the Bureau of Labor Statistics. 20 C.F.R. §§ 404.1566(d), 416.966(d). The SSA "does not tally the number of job openings at a given time, but rather approximates the number of positions that exist, whether vacant or filled, and without regard to the location of the work and a claimant's likelihood of being hired." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoted authority omitted).

Whether the claimant can perform jobs that exist in significant numbers in the national economy is a question of fact for the ALJ. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1318 (11th Cir. 2021). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

For the finding, an ALJ may use the testimony of a vocational expert (VE). 20 C.F.R. §§ 404.1566(e), 416.966(e). *Winschel v. Comm'r of Soc. Sec.*,

631 F.3d 1176, 1180 (11th Cir. 2011). VEs are professionals under contract with the SSA to provide impartial testimony during agency hearings. Hearings, Appeals, and Litigation Law Manual (HALLEX), HA 01210.031 & HA 01250.048; Program Operations Manual System (POMS) DI 25003. They must have "expertise" and "current knowledge" of "[w]orking conditions and physical demands of various" jobs; "[k]nowledge of the existence and numbers of [those jobs] in the national economy"; and "[i]nvolvement in or knowledge of placing adult workers[ ]with disabilities[ ]into jobs." HA 01210.031. "Many [VE]s simultaneously work in the private sector locating employment for persons with disabilities." *Biestek*, 587 U.S. at 100.

Social Security Ruling (SSR) 24-3p provides this explanation of how the SSA uses a VE's testimony:

> Our adjudicators must determine whether ... VE evidence is adequate to decide the claim and must do so efficiently. ... VEs may provide evidence based on their professional experience and any reliable source of occupational information that is commonly used in the vocational profession and relevant under our rules. ... VEs are in the best position to determine the most appropriate sources of data to support the evidence they offer. We expect ... VEs to identify the sources of the data they use and, where applicable, to explain their general approach to estimating job numbers. If the ... VE uses a data source that defines exertion, education, or skill levels differently than our regulations, we expect the ... VE to explain the difference. We may instruct ... VEs to address other concerns as needed. For example, ... VEs should identify and explain if they cite an occupation that is performed in a different way than identified in the source of data they used. Because VEs ... are impartial and qualified professionals whom we consult because of their expertise, a more detailed inquiry into the sources of data or approaches used is not usually required. At the hearing level, when the claimant is represented, we expect the representative to raise any relevant questions or challenges about the VE's testimony at the time of the hearing and to assist in developing the record through appropriate questions to the VE. Based on the vocational evidence in the case and the record

> overall, an adjudicator will determine whether the evidence provided by a ... VE is adequate to support a decision[.]

SSR 24-3p, 89 Fed. Reg. 97160, 2024 WL 5256890 (Dec. 6, 2024) (footnote omitted).[3] When estimating numbers, a VE may draw on vocational knowledge and expertise, using a variety of methods, which can lead to substantially different estimates. *Goode*, 966 F.3d at 1284. The Social Security Act does not "mandate a precise count of job numbers" or require a VE to "formulate opinions with more confidence than imperfect data allows." *Id.*

A VE's testimony can serve as substantial evidence "even when unaccompanied by supporting data," but a reviewing court must "take[] into account all features of the [VE]'s testimony, as well as the rest of the administrative record." *Biestek*, 587 U.S. at 105, 108. "[A]n ALJ's finding that jobs that the claimant could perform exist in significant numbers in the national economy is not supported by substantial evidence when it is based on VE estimates that the claimant has challenged, and the VE (1) used a significantly flawed methodology or (2) provided an estimate that defied

---

[3]Effective January 6, 2025, the SSA rescinded Social Security Ruling (SSR) 00-4p and replaced it with SSR 24-3p. The new ruling applies under the following circumstances:

> [The agency] will use this SSR beginning on its applicable date. [The agency] will apply this SSR to new applications filed on or after the applicable date of the SSR and to claims that are pending on or after the applicable date. This means that we will use this SSR on and after its applicable date in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the applicable date of this SSR, we will apply this SSR to the entire period at issue in the decision we make after the court's remand.

SSR 24-3p, 89 Fed. Reg. 97159, 2024 WL 5256890 (Dec. 6, 2024). The new ruling was not in effect when the ALJ issued his decision in this case, but was in effect when the Appeals Council denied review.

common sense without any explanation." *Acosta v. Acting Comm'r of Soc. Sec.*, No. 24-12495, 2025 WL 1672408, at *2 (11th Cir. June 13, 2025) (citing *Goode*, 966 F.3d at 1281–84, and *Viverette*, 13 F.4th at 1319). "The inquiry, as is usually true in determining the substantiality of evidence, is case-by-case." *Biestek*, 587 U.S. at 108. "It takes into account all features of the [VE]'s testimony, as well as the rest of the administrative record. And in so doing, it defers to the presiding ALJ, who has seen the hearing up close." *Id.*

The Eleventh Circuit suggests that judicial review is limited when a VE's testimony is unchallenged, stating, in a case in which the claimant's lawyer had asked the VE questions about job numbers, "This is not a case in which the claimant failed to challenge or question the [VE]'s methodology or job numbers." *Goode*, 966 F.3d at 1284 n.3 (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1110 (9th Cir. 2017), for its quotation, "It is enough to raise the job numbers issue in a general sense before the ALJ. A claimant may do so by inquiring as to the evidentiary basis for a [VE's] estimated job numbers." (internal alterations omitted)); *accord White v. Bisignano*, No. 4:25-cv-624-EGL, 2026 WL 2140217, at *5 (N.D. Ala. July 24, 2026) ("Unlike in *Goode*, this *is* a case 'in which the claimant failed to challenge or question the [VE]'s methodology or job numbers.' Here, because [the claimant] did not challenge the VE testimony or her methodology, we have no indication as to the expert's sources, her reason for using those sources, or how she calculated the specific number from those sources. The Court in *Goode* could evaluate the clearly flawed methodology because the VE explicitly cited the SOC and explained his methodology. That is not the case here. The VE gave no indication that she calculated job numbers using data from the SOC. [The claimant] argues that, based on the [Standard Occupational Classification (SOC)] code, the VE's numbers are impossible. But her argument fails

because there is no indication that the VE relied on SOC data, and therefore no indication that the 400,000 number is impossible." (citations omitted)); *Mesa v. Kijakazi*, No. 21-20424-CIV, 2022 WL 4369733, at *10 (S.D. Fla. May 11, 2022), *report and recommendation adopted*, No. 21-20424-CIV, 2022 WL 4366950 (S.D. Fla. Sept. 21, 2022) ("[The claimant] did not ask any questions of the VE about his method of calculation or the data upon which he was relying. Instead, [the claimant]'s inquiries for the VE only revolved around changing the hypothetical individual's conditions and abilities. … [The claimant] is now asking the [court] to find fault with the ALJ's factual determinations because she believes the VE's testimony is false.").

Here, the ALJ conducted a hearing in June 2024. Tr. 38–67. The plaintiff, represented by counsel, and a VE testified. Tr. 38–67. The VE has a Bachelor of Social Sciences degree and a Juris Doctor degree. Tr. 61, 494. He has served in the Forensic and Vocational Expert Sections of the International Association of Rehabilitation Professionals. Tr. 61, 494. Since 1996, he has served as a VE for the SSA. Tr. 61, 494. The plaintiff had no objection to his qualifications to serve as a VE. Tr. 61.

At the hearing, the VE testified that he is "familiar with jobs in the national economy," that he had reviewed the record "with regard to vocational considerations," and that he had listened to the plaintiff's testimony. Tr. 60. The VE described the plaintiff's past work over the last fifteen years and opined on jobs that hypothetical persons could do. Tr. 61–66. One hypothetical was based on the plaintiff's characteristics and the RFC that the ALJ ultimately found. Tr. 23, 62–63. When asked whether he could "find jobs that exist in the economy" for the hypothetical person, the VE answered yes and identified three sedentary jobs, each with a Specific

Vocational Preparation (SVP) of 2: (1) "[t]ouch-up screener printed circuit board assembly," DOT number 726.684-110, **4,192** jobs in the national economy; (2) "stuffer," DOT number 731.685-014, **4,762** jobs in the national economy; and (3) "finisher," DOT number 731.687-014, **24,932** jobs in the national economy. Tr. 63. The VE testified that no difference exists between the manner in which he had considered the jobs and the DOT and the Selected Characteristics of Occupations (SCO). Tr. 63. The plaintiff's lawyer asked the VE about jobs if the hypothetical person needed direct supervision or gradual changes to the work setting; about whether the identified jobs required a fast pace, demand for high production, or need to resolve conflicts; and about what information the VE uses to determine breaks. Tr. 64–67.

At the hearing, the plaintiff's lawyer informed the ALJ that he was having difficulty getting medical records from four facilities. Tr. 42–43. The ALJ agreed to admit the evidence if received before his decision, but the ALJ received none. Tr. 18, 31, 42–43. The ALJ entered his decision in August 2024. Tr. 31.

In the decision, the ALJ found that, based on the plaintiff's age (45 years old on the alleged disability onset date), education (a high school diploma, an associate's degree, and an electrician's certificate), work experience (a retail sales clerk, a warehouse worker/order picker/laborer, and an electrician), and RFC (sedentary work with additional limitations, Tr. 23), he can perform jobs that exist in significant numbers in the national economy. Tr. 29–30. The ALJ provided this explanation:

> The [VE] testified that given all of these factors the individual would be able to perform the requirements of representative unskilled sedentary occupations such as <u>touch[-]up screener printed circuit board assembler</u> (DOT # 726.684 110; with

> approximately **12,192**[4] [sic] jobs available in the national economy), stuffer (DOT # 731.685-014; with approximately **4,762** jobs available in the national economy) and finisher (DOT # 731.687-014; with approximately **24,932** jobs available in the national economy (Hearing Testimony).
>
> Pursuant to SSR 00-4p, the undersigned has determined that the [VE]'s testimony is consistent with the information contained in the DOT.
>
> Based on the testimony of the [VE], the undersigned concludes that, considering the [plaintiff]'s age, education, work experience, and [RFC], he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.

Tr. 30.

The plaintiff's lawyer requested review by the Appeals Council and offered three reports in support of the request. Tr. 242–45, 252–59. The plaintiff's lawyer argued that the reports show that the job numbers are "grossly inflated as there are only 1,178 circuit board assembler positions; 306 stuffer positions; and 32 finisher positions." Tr. 243, *see* Tr. 252–59. The plaintiff's lawyer further argued that the ALJ had been improperly appointed, rendering the Appeals Council incapable of issuing a valid final decision. Tr. 244. The plaintiff's lawyer concluded, "The summary of these objections is that neither the ALJ nor this Council have any valid legal authority to issue a denial in this case." Tr. 245.

The Appeals Council made the submission a record exhibit, Tr. 5, and denied the request for review, Tr. 1. In a July 2025 letter, the Appeals

[4]The plaintiff mentions in a footnote that the ALJ misstated the numbers for the touch-up screener printed circuit board assembler job. Doc. 13 at 6 n.2. The misstated number may be merely a typographical error, considering that the ALJ heard the different number at the hearing. Tr. 63. In any event, the plaintiff does not argue that the misstated number is a basis for reversal. *See* Doc. 13.

Council explained that it had considered the reasons for review offered by the plaintiff's lawyer and found they provided no basis for changing the ALJ's decision. Tr. 1. The Appeals Council stated the reasons under which it reviews a case, including, among others, the receipt of evidence that is "new, material, and relates to the period on or before the date of the hearing decision" upon showings of a "reasonable probability that the additional evidence would change the outcome of the decision" and good cause for not submitting the evidence earlier. Tr. 1. The Appeals Council added this explanation:

> Although you submitted a request for review of the [ALJ]'s decision, you through your representative have submitted correspondence dated October 21, 2024, questioning the agency's authority to act on this matter. We considered your contentions. However, under current regulation and authority, the Appeals Council is responsible for reviewing and acting on all appropriately filed requests for review.

Tr. 2.

Whether under the de novo or deferential standard of review, the plaintiff shows no basis for reversal. Because the plaintiff's lawyer failed to ask the VE even a single question about the job numbers, the import of the post-decision evidence is impossible to assess. What sources did the VE use? Why did he choose them? How did he calculate each number from those sources? The answers to those questions are unknown, making it impossible to say whether the post-decision evidence would have changed the outcome, much less whether there is a reasonable probability that it would have done so. As the Eleventh Circuit suggests, judicial review is limited when a VE's testimony about job numbers or methodology is unquestioned. *See Goode*, 966 F.3d at 1284 n.3. Were it otherwise, a claimant's lawyer could sit silent

during a VE's testimony at the evidentiary hearing, await the ALJ's decision based on that testimony, and, if adverse, obtain a new evidentiary hearing merely by offering any differing job number based on any source. The plaintiff raises no argument that the ALJ should have asked the questions in his stead. See Doc. 13.

The plaintiff relies on *White v. Kijakazi*, 44 F.4th 828 (9th Cir. 2022). In *White*, the Ninth Circuit considered language of the Appeals Council similar to the language here and remanded the case for the ALJ to address the plaintiff's post-decision evidence of "vastly discrepant job-number estimates." 44 F.4th at 830. *White* does not help the plaintiff. *White* is not binding, and in *White*, unlike in this case, the VE testified, upon questioning by the plaintiff's lawyer and the ALJ, about the estimated job numbers and the source used to determine them, thereby allowing the Ninth Circuit to consider their import. *Id.* at 831–32.

The Commissioner's final decision is **affirmed**. The clerk is **directed** to enter judgment for the Commissioner of Social Security and against Michael Barrett and close the file.

**Ordered** in Jacksonville, Florida, on September 18, 2026.

Patricia D. Barksdale

Patricia D. Barksdale
*United States Magistrate Judge*